**FIFE MANUFACTURING COMPANY, Plaintiff-Appellant,**

v.

**STANFORD ENGINEERING CO., Defendant-Appellee.**

**No. 13455.**

United States Court of Appeals Seventh Circuit.

Feb. 6, 1962.

Robert F. Davis, Washington, D. C., Robert L. Broderick, East St. Louis, Ill., Jerry J. Dunlap, Oklahoma City, Okl., for appellant.

Roy A. Lieder, St. Louis, Mo., for appellee.

Gravely, Lieder & Woodruff, St. Louis, Mo., for defendant-appellee. Raymond O. Horn, Salem, Ill., of counsel.

Before DUFFY, CASTLE and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is a patent infringement suit. Plaintiff alleges defendant has infringed Claims 4, 10, 11 and 12 of Fife Patent No. 2,797,091. Defendant asserted non-infringement and urged the invalidity of the patent. The District Court held the patent valid if restricted to the unique type of web guide roller carrying mechanism disclosed in the patent, but the Court found the patent was not infringed by defendant. The trial court's excellent opinion may be found in 193 F.Supp. 226. The plaintiff has appealed from the holding of non-infringement. Although defendant had interposed a counterclaim alleging invalidity of the patent in suit, and the District Court dismissed the counterclaim, defendant did not cross-appeal.

Plaintiff is the owner of Fife United States Patent No. 2,797,091 entitled "Web-Shifting Apparatus." The patent was issued June 25, 1957. The original application was filed April 28, 1950, and a continuation-in-part application was filed August 5, 1955.

Many industrial plant operations involve the processing of long and relatively narrow sheets of material of various types, such as paper, plastics, fabrics and rubber. Regardless of the material handled, the long sheets are commonly known as "webs." In a typical industrial application, a web is supplied on what is known as an "unwind roll" and is threaded through one or more machines such as printing machines and slitting machines, and is then wound on what is commonly known as a "rewind roll."

As a web travels from the unwind roll through the processing machinery and to the rewind roll, a distance sometimes of several hundred feet, the web invariably deviates from the desired path of travel. This occurs due to several causes, such as stretching of the web or variations in thickness of the material in the web. During its period of travel, a web will tend to move toward the thicker side of the web. Where this deviation from the path of travel occurs, unless prevented by some adequate device, there will be required a wider web which will result in a waste of materials. Also, a web which deviates from the desired path of travel will be unevenly wound or telescoped on the rewind roll and will be difficult to handle.

Irwin L. Fife, president of the plaintiff and the inventor of the patent in suit, first went into the business of manufacturing and selling web-guiding equipment in 1939 or 1940. At that time, the best known type of web-guiding was accomplished by laterally shifting either the unwind roll or the rewind roll or both. This shifting often would be done manually when the operator observed the web was deviating from the desired path of travel or when he observed the rewind roll was becoming telescoped.

Mr. Fife then manufactured a device for automatically sensing deviations in the path of travel in a web. By it, either the unwind roll or the rewind roll would be automatically shifted to correct a deviation. A sensing head was placed at one edge of the web; this sensing head sent signals to a power unit when the edge of the web moved transversely with respect to the sensing head and either

the unwind or the rewind roll would be shifted. However, shifting of the unwind roll or the rewind roll was found to be insufficient for precise control of the web in many cases, particularly where the web was extended an appreciable distance between the rewind and the unwind rolls.

Another apparatus used at that time was called the "Waldron guide." This device was constructed in accordance with the teachings of Dickhaut Patent No. 1,634,984. It employed a pair of spaced guide rollers with the web threaded under roll 1 and over roll 2 for maintaining frictional engagement between the web and guide rollers. This frictional engagement is commonly known as "wrap." The device was positioned between the unwind roll and the rewind roll.

William T. Stanford, president of the defendant Stanford Engineering Company, worked for Fife in 1939. He went into business for himself in 1942 and began manufacturing and selling devices for shifting an unwind roll. In 1952, Stanford began the manufacture and sale of an intermediate guide known as Stanford Model 11. The Stanford Engineering Company was incorporated in 1956, and continued the manufacture and sale of the Model 11 guiding device. Shortly after the patent in suit issued, plaintiff sent a notice of infringement to defendant. Defendant continued assembling and selling Model 11 until it had used up a stock of parts which it had on hand. Thereafter, the manufacture of Model 11 was discontinued. The manufacture and sale of Model 110 had already been started.

The apparatus disclosed in the patent in suit is described in Finding of Fact No. 10, as follows:

"* * * The subject matter of the patent involves an improvement in web shifting apparatus having guide rollers over which the web travels. The ends of the guide rollers are secured to movable support members, which slide with respect to angularly mounted base plates, which are bolted in a fixed position. The base plates have guide rods on which the support members slide. Bearings or support members are pivotally mounted to the followers and receive the roller shafts. The rollers move along a pre-determined path and are guided along that path by means of an external power source or actuator, which is controlled in its movement by impulses received from a feeler or guide mechanism which is mounted so as to contact the edge of the web to be guided. The guide roller movement is a simultaneous lateral and swivel movement, which effects a canting or cambering to correct misalignment of the web."

Plaintiff does not claim the elements of the patent are new, but insists that the novelty in arrangement is new in that it provides for both lateral and swivel movement in its operation, whereas, so plaintiff claims, the prior art provided for merely lateral or swivel movement but not for the two in conjunction.

Plaintiff alleged the infringement of Claims 4, 10, 11 and 12 of the patent in suit. Claim 11 provides:

"In a self-compensating mechanism for straightening traveling webs comprising in combination a roller over which the web travels and about which it is wrapped to effect a substantial frictional engagement therewith, said roller extending transversely to the direction of web travel, means disposed at each side of the web for journalling an end of said roller, means co-operating with the first mentioned means to provide for simultaneous lateral and swivel movement of said roller, means responsive to lateral deviations of the web from a pre-determined path of travel for directing the first mentioned means in said simultaneous lateral and swivel movement for effecting a canting movement of the roller."

Claim 12 is identical except there is added the words "in a horizontal plane"

after the words "simultaneous lateral and swivel movement" which appear near the end of the claim.

Claim 4 calls for a "base plate supported at each side of the web and disposed at an angle to the direction of the web travel, a movable support member carried by each base plate for journalling the ends of the rollers * * *."

■ Considering first the question of infringement, the accused device has only pivoted links to support the guide rollers, whereas the device of the patent in suit has the L-shaped brackets 1 and 2; the followers 27 and 47, and base plates 20 and 40. To establish infringement, there must be identity of means, operation and result. Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 7 Cir., 194 F.2d 945.

■ It is well settled that a patent owner may not apply a narrow construction to his claim to avoid the prior art and then apply a broad construction to include an accused device. If the claims in suit are interpreted so as to avoid the prior art, then they cannot cover pivoted links which were old in the art, but must be restricted to the base plate, guide rods, followers and support member arrangement disclosed in the patent. Any interpretation of the claims in suit which would render them broad enough to cover accused Model 110, would render them invalid on the prior art.

Plaintiff urges that the combination of elements in the claims at issue and the combination of elements in the accused device are equivalent, and strongly urges that the doctrine of equivalents applies. In effect, plaintiff says that the pivoted links in the accused device are the mechanical equivalents of plaintiff's base plates.

■ "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097. Where the patent is found in a crowded art, the doctrine of equivalents is given a narrow range. Parmelee Pharmaceutical Company, et al. v. Zink, 8 Cir., 285 F.2d 465. Fife was working in a crowded art. The District Court held the doctrine of equivalents did not apply, and we agree.

■ The accused device, Model 110, omits essential elements of the patented combination. It is the omission of parts of the patented device which causes the end of defendant's rollers to move in an arc rather than in a straight line as in the patented device. We think the District Court was correct in holding the claims at issue were not infringed by defendant's Model 110.

Plaintiff argues the District Court should have found infringement because it manufactured Model 11 prior to its Model 110. The patent in suit issued June 25, 1957. Defendant discontinued making Model 11 after the notice of infringement was given in July, 1957. The few devices assembled from existing parts after the notice of infringement were apparently ignored by the District Court by applying the rule of *de minimis non curat lex*. We approve.

We also agree with the District Court that construing the claims of the patent in suit narrowly to the specific structure shown which includes the base plates, guide rods, slidable followers and support members, the claims in suit do contain patentable invention and are valid.

We quote the following with approval from the opinion of the District Court (193 F.Supp. at 232):

"The plaintiff in effect asks this Court to declare that all web guiding apparatus utilizing a guide roller capable of lateral and swivel movement and controlled by a feeler mechanism, acting in cooperation with an external power source, infringes the patent in suit. Such is not the case. If the patent presented to the Patent Office had been intended to be so all-inclusive as the plaintiff here contends, then it clearly would not have been patentable over the prior art. When limited to

the specific combination disclosed in the patent, then and only then is it worthy of a patent grant. The patent certainly could not have been granted by the Patent Office in the face of the multitudinous inventions existing in this crowded art if the broad claims here asked had been represented to the Patent Office."

Defendant urges that it asserted additional grounds of invalidity of the patent in suit in the District Court and that we should consider and rule upon same in spite of the fact defendant did not cross-appeal. We decline to do so as the Court made no applicable findings and the opinion of the District Court did not discuss such points. Before we could pass on those contentions, we would be required to return the case to the District Court for additional findings. We have elected to base this opinion and decision upon the issues which were decided in the District Court.

Affirmed.